MARKS *v.* Fox and another.

MARKS *v.* SCHWARTZ and another.

(*Circuit Court, S. D. New York.* December 10, 1880.)

1. RE-ISSUE No. 7,808—"IMPROVEMENT IN CAPS."
    Re-issued letters patent No. 7,808, division B, for an "improvement in caps," does not contain new matter, and is not broader than, and, for an invention, different from, that described in the original patent.

2. PRIOR USE—EVIDENCE.
    Evidence of prior use is inadmissible when such use is not set up in the pleadings.—[ ED.

*Frederic H. Betts* and *C. Wyllys Betts,* for plaintiff.

*Gilbert M. Plympton,* for defendants.

BLATCHFORD, C. J. These suits are founded on re-issued letters patent No. 7,808, Division B, granted to the plaintiff July 24, 1877, for an "improvement in caps," the original patent having been granted to him August 3, 1875. The specification of the re-issue, embracing what is outside and what is inside of brackets, and excluding what is in italics, says: "Figure 1 represents a side view when the [swinging] ear and neck protector is pulled down. Figure 2 is a vertical central section when the ear and neck protector is up. Similar letters indicate corresponding parts. This invention consists in an ear and neck protector connected to the back part of the crown of a hat or cap by a tape [or cloth] and to *its* [the] sides [or near the front of the hat or cap] by loops and buttons, or other equivalent fastenings, in such a manner that, whenever it may be desirable, said protector can be

drawn down to cover the ears and *the* neck of the person wearing the cap, and, when no such protection is needed, said protector can be raised, when it serves to impart to the cap a finished appearance. In the drawing the letter A designates a cap, to the rear part of which is attached my ear and neck protector, B. The protector is held in place by a tape, [or cloth,] *a, in its middle,* [at the back,] and by loops,. *b,* which are fastened to its ends and catch over buttons, *c,* secured to the body or crown of the cap, [at the sides or near the front,] said fastenings being so constructed that the protector swings up and down as far as the tape, [or cloth,] *a,* will allow, the buttons, *c,* forming the centers on which the swinging motion takes place. It is obvious that for loops and buttons other devices may be substituted without deviating from my invention. *My cap is ornamented in front by a band, C, and, if the protector, B, is raised, it forms a similar band on the back part of the cap, and thereby a finished appearance is imparted to the article.* In cold or inclement weather the person wearing my cap can draw down the protector, B, to the position shown in figure 1. In this position the lower edge of said protector hugs the neck of the person wearing my cap with a close fit, and at the same time the ears of said person are covered, so that those parts are carefully protected against cold air, wind, rain, or snow. My cap is exceedingly simple in its construction; it can be made and sold at a low cost, and it is of great convenience, particularly *for* [to] persons compelled to spend much of their time in the open air."

The claims, three in number, are as follows: "(1) As a new article of manufacture, the head covering, A, with a swinging ear and neck protector, B,,attached near the front by buttons and loops, or other equivalent devices, upon which the neck protector swings as an axis, and attached at the rear by a tape or cloth, which prevents the upper edge of the protector from swinging below the lower edge of the hat or cap, the said several parts being constructed and combined substantially as described; (2) the swinging or sliding neck protector, B, constructed substantially as described, so as to swing or slide on fastenings at the sides or near the front of

the cap; (3) the swinging or sliding neck protector, B, constructed substantially as described, so as to swing or slide on fastenings at the side or near the front of the cap, and connected with the cap at the back by a tape or cloth to prevent it from swinging or sliding below the lower edge of the hat or cap." Reading the foregoing specification, (excluding the claims,) by leaving out what is in brackets, and including what is in italics, gives the specification of the original patent, and shows the differences between the original and the re-issue. The claim of the original was in these words: "As a new article of manufacture, the head covering, consisting of the crown or body, A, band, C, ear and neck protector, B, tape, *a*, and fastenings, *b, c,* said protector being arranged upon the exterior of the article, substantially as described, and adapted to move up and down thereon."

It is contended for the defendants that the re-issue contains new matter, and is broader than, and, for an invention, different from, that described in the original patent. Exception is taken to the introduction into the body of the re-issued specification of the words "or cloth," and of the words "or near the front," and to the omission of the words "in its middle," and the substitution of the words "at the back;" also, to the introduction into the first claim of the re-issue of the words "or cloth," and of the words "which prevents the upper edge of the protector from swinging below the lower edge of the hat or cap." It is urged that in the re-issue the location of the tape is undefined; that there is no warrant in the original patent for adding the words "or cloth;" and. that there is nothing by way of description, in the original or in the re-issue, suggesting that the tape prevents the upper edge of the protector from swinging below the lower edge of the hat or cap. It is plain, from the description in the original specification and the drawings, that a "cloth" substituted for a "tape," in the same location and attached in the same manner, will perform the same office that a tape does. In fact, a tape is a cloth, and a cloth, *quoad* what it has to do, where it is to be, is a tape. The words "or near the front" are fully authorized by the original description and by the drawings.

The buttons, c, over which the loops catch, are not only at the sides, but are near the front. They form centers for the swinging motion of the protector up and down, as the original specification states. The drawings show the buttons near the front, as compared with the position of the swinging protector. The original specification and the re-issue state that figure 1 represents a side view when the protector is down. In that side view the upper edge of the protector is above the lower edge of the hat or cap. The original specification and the re-issue state that the protector swings up and down as far as the tape, a, will allow. The plain construction of the whole language is that the tape is not to allow the protector to swing so far down that the upper edge of the protector will be below the lower edge of the hat or cap. Therefore the language of the first claim of the re-issue was warranted. According to the original specification the band, C, was no part of the invention, yet it is made a part of the claim of the original. Hence the re-issue was proper to change the claim, and nothing which can be called new matter was inserted in the specification of the re-issue.

The caps made by the defendants, Fox 1, Fox 2, Fox 3, Schwartz C, and Schwartz D, contain the same arrangement as that shown by the plaintiff's patent. The fact that the defendants' tape or cloth behind, in addition to being in the middle at the back, extends around towards the front on each side, makes no difference. The connecting tape is there, behind, where it is needed. It is flexible, and folds up, when the protector is raised, as in the plaintiff's cap. The protector in the defendants' caps cannot swing below the lower edge of the cap proper. The tape in the defendants' caps is so attached that when the protector is down the tape or cloth is not visible. But that is, at most, an improvement. The defendants' caps have, all of them, either a positive connection towards the front of the cap on which the forward end of the protector turns, and on which the protector swings, or else the arrangement is such that the forward ends of the protector hug the cap so closely that when the rear part of the protector is pulled down the forward parts do not also go

down, but remain, and the protector swings as on a pivot. It may also be true that, under certain circumstances, the strip of muslin between the protector and the cap, in the defendants' caps, acts to guard against all danger of the admission of wind or rain between the protector and the cap. But this, too, is at most an improvement. The defendants' caps contain all the arrangements found in the plaintiff's cap, operating in the same way and producing the same result. They contain all the features of difference which distinguish the plaintiff's cap from the old double-band cap and the old turnover single-band cap. The defendants' caps infringe all the claims of the re-issue, Division B.

It is contended by the defendants that they have shown, by evidence, that caps like the plaintiff's cap, and caps like the defendants' caps, existed before the plaintiff's invention. The evidence is very voluminous. A careful examination of it leads to the conclusion that the defendants have failed to make out this defence. Not a cap is produced which is claimed to have been made before the plaintiff obtained his patent. Everything depends on the recollection of dates and structures, and on the reproduction now, from memory, of copies of what are alleged to have been pre-existing structures. The testimony produced on the part of the defendants is either defective or insufficient as given, or else is successfully rebutted by the plaintiff, either directly, or by showing, from the knowledge of persons in the trade, that it is impossible that the claimed prior structures should have existed. The double-band cap and the turn-over single-band cap are the only caps, the prior existence of which is successfully proved, and they do not meet the plaintiff's patent. The claims of that patent contain patentable inventions.

Sundry objections to testimony, made by the plaintiff on the record, are insisted on and must be passed upon. The evidence of Elias Rosenswig as to prior use in Baltimore is ruled out, because such use is not set up in the answer. None of the other objections are sustained.

There must be the usual decree for the plaintiff.